```
┌─────────────────────────────────┐
│ USDC SDNY                       │
│ DOCUMENT                        │
│ ELECTRONICALLY FILED            │
│ DOC #:_____           │
│ DATE FILED: 3/14/2022           │
└─────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BRANDON C. JONES,

　　　　　　　　Plaintiff,

　　　　-against-

VOLUNTEERS OF AMERICA GREATER NEW
YORK, et al.,

　　　　　　　　Defendants.

---

1:20-cv-5581 (MKV)

**OPINION AND ORDER
GRANTING DEFENDANTS'
MOTION TO DISMISS**

MARY KAY VYSKOCIL, United States District Judge:

　　*Pro se* Plaintiff Brandon Jones alleges that he was denied rights guaranteed to him under

the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* (the "ADA"), the Rehabilitation

Act, 29 U.S.C. §§ 701 *et seq.*, and the Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.* (the "FHA"),

while living at a homeless shelter run by Defendant Volunteers of America Greater New York

(the "VOA").  Plaintiff alleges that Defendants Lijin Thomas, Jonathan Tavarez, and Deborah

Johnson, all employees of the VOA (collectively, "Defendants") discriminated against him on

the basis of his disability.[1]  Pending before the Court is the Defendants' Motion to Dismiss

Plaintiff's Third Amended Complaint.  [ECF No. 29].  For the reasons stated herein, the motion

is granted.

---

[1] Plaintiff's Third Amended Complaint inconsistently, and improperly, names the Defendants in this action.  The
Third Amended Complaint lists "Deborah Johnson" as "Defendant 3."  Third Am. Compl. at 4.  The caption on
Plaintiff's form complaint does not list Deborah Johnson as a defendant.  Third Am. Compl. at 1.  Plaintiff's
appended "Factual Statement of Record" also does not mention Deborah Johnson as a defendant. *See* Third Am.
Compl. at 10, 17.  For the avoidance of doubt, however, the Court construes the Defendants in this case as the VOA,
Lijin Thomas, Jonathan Tavarez, and Deborah Johnson.  Defendants write that Plaintiff misspells certain
individuals' names (Tavarez as Tauarez, and Lijin Thomas as Jisin Thomas).  [ECF No. 29].  The Court uses the
provided proper spelling of the Defendants' names where applicable.

## BACKGROUND

### I.      FACTUAL BACKGROUND

On this motion, the Court is constrained to "accept all factual allegations in the complaint

as true and draw all reasonable inferences in" Plaintiff's favor.  *Cargo Partner AG v. Albatrans,*

*Inc.*, 352 F.3d 41, 44 (2d Cir. 2003) (internal quotation marks, citation, and alterations omitted).

The following facts are adapted from Plaintiff's Third Amended Complaint.[2]

From February through July 2020, Plaintiff lived at the "Swartz Building," located on

Randall's Island in New York City, at a Volunteers of America Greater New York shelter (the

"VOA Shelter").  Third Am. Compl. at 5, 10, 13.  During his intake at the facility, Plaintiff

"filled out numerous packets of paperwork" which "formally disclosed" his disabilities and his

required medicine.  Third Am. Compl. at 10.  According to Plaintiff, he has suffered from third-

degree burns on both of his legs and feet, lymphedema, and chronic pain "since December 9th,

1992," and Vons Willebrand disease "since birth."  Third Am. Compl. at 10.  The burns increase

his risk of infection.  Third Amended Compl. at 10.

The day following intake, Plaintiff "woke up to uncapped needles in [his] blankets and

sheets" and found the showers to be "filled with hazardous trash."  Third Am. Compl. at 10.

Plaintiff was told to see Defendant Lijin Thomas "regarding the shower situation" and for any

requests for "medical equipment."  Third Am. Compl. at 10.   A few days later, Plaintiff met

with Thomas who told him that "no medical equipment was permitted" inside the shelter, and

that cleaning supplies, like bleach, were also prohibited for resident use because they "could be

used as a weapon."  Third Am. Compl. at 11.  Plaintiff left Thomas' office and looked for

---

[2] Plaintiff, *pro se*, has attached a "Factual Statement of Record" to his Third Amended Complaint.  [ECF No. 25].
The Court construes the attachment as part of his Third Amended Complaint.  Because the document does not have
internal pagination or numbered paragraphs, the Court will cite to the allegations as they appear at the ECF
pagination of the entire document.

another person to assist him in his request for "medical equipment and cleaning supplies."  Third Am. Compl. at 11.  After speaking with another individual, he was directed back to Thomas who told him "I don't have time to talk to you."  Third Am. Compl. at 11.

A few weeks later, Plaintiff was treated for an infection in his left foot at a hospital in Manhattan.  Third Am. Compl. at 11.  Plaintiff was given antibiotics, pain medicine, and a note "to receive cleaning supplies" for the shower area.  Third Am. Compl. at 11.  When Plaintiff took the note to Thomas she "declined to even look at" it.  Third Am. Compl. at 11.  The next day, Plaintiff "filed a formal grievance into the matter of cleaning supplies" with an individual who worked at the front desk of the shelter.  Third Am. Compl. at 11.  That individual "took [the] grievance" and said that someone "will look into the issue."  Third Am. Compl. at 11.  Plaintiff then asked if he could store his medicine in the refrigerator but he was told that he "was not permitted to use the refrigerator."  Third Am. Compl. at 11.  Plaintiff returned to Thomas who said that he "could not refrigerate anything—including medication."  Third Am. Compl. at 11.

Plaintiff next renewed his requests for cleaning supplies and medical equipment with Defendant Jonathan Tavarez.  Third Am. Compl. at 11.  Tavarez informed Plaintiff that "Ms. Thomas told him [he] was not permitted cleaning supplies or medical equipment."  Third Am. Compl. at 11.  Plaintiff then called his probation officer who said that he had "nothing to do with the [VOA Shelter] and [Plaintiff has] to work it out with them."  Third Am. Compl. at 11.[3]

A month later, near the end of March 2020, Plaintiff returned to the hospital to be treated for a skin infection and sore on his left foot.  Third Am. Compl. at 11.  He was provided "bed-

---

[3] The record is devoid of any information about why Mr. Jones might have a probation officer; although elsewhere in his operative complaint Mr. Jones later references a "white collar case."  Third Am. Compl. at 13.

rest passes" and "other letters for cleaning supplies and medical equipment," which were passed on to Tavarez. Third Am. Compl. at 11. Plaintiff did not receive cleaning supplies and medical equipment and was "not permitted to stay [in] bed." Instead he was told by "employees of the [VOA Shelter]" that he had to "leave the dorm area and stay out in front" in the "TV area." Third Am. Compl. at 11-12. The doors returning to the dorms were "purposely locked" which prevented Plaintiff from accessing his antibiotic and pain medicine. Third Am. Compl. at 12.

In April 2020, Plaintiff was treated for an infection in both feet, and asked for an "updated medical note concerning 'medical solution – not bleach.'" Third Am. Compl. at 12. He provided the note to Thomas who "once again refused to accept the note." Third Am. Compl. at 12. At some point during this period, Plaintiff was "referred to a lymphedema doctor" who "ordered a specialized pump to remove built up fluid from [Plaintiff's] disabled legs and feet." Third Am. Compl. at 12. The pump was sent to the VOA Shelter via Federal Express, but the shipment was rejected because shelter personnel told the driver they did not know who the recipient was. Third Am. Compl. at 12. Plaintiff attributes this rejection to the VOA Shelter's "two official representatives," Thomas and Tavarez. Third Am. Compl. at 12. Following the rejection, Plaintiff called the CEO of Volunteers of America, located in Virginia, after which he received a call from the "out-going President" of the New York office. Third Am. Compl. at 12. Plaintiff was told that the out-going president would "do [her] best to assist [him]" but that she was retiring and he could be assisted by her replacement. Third Am. Compl. at 12.

In May 2020, Plaintiff returned to the hospital for infections, and received a note for cleaning supplies that stated: "Patient shall be provided with bleach solution to clean showers before and after every use – due to burns and frequent cellulitis & [MRSA] infections." Third Am. Compl. at 12. That note, and Plaintiff's request for medical equipment, was again rejected,

apparently by Thomas and Tavarez.  Third Am. Compl. at 12.  Plaintiff then decided to contact

"DHS, NYS Agencies and 311" and received a complaint number.  Third Am. Compl. at 12.

Plaintiff's situation did not change, but he states he "started having more issues with the

Directors" of the VOA Shelter.  Third Am. Compl. at 12.  A month later, Plaintiff received a

phone call and text from Deborah Johnson who said she would let the out-going president know

about Plaintiff's requests.  Third Am. Compl. at 12.

On July 9th, 2020, Plaintiff "filed a formal complaint with the New York State Division

of Human Rights – Housing Complaint Unit," which he provided to a shelter employee who

passed it along to Thomas and Tavarez.  Third Am. Compl. at 13.  That same day, Plaintiff was

given an "infraction" by Tavarez "for having electronics, [including his] Bi-Pap Machine."

Third Am. Compl. at 13.  After receiving the infraction, Plaintiff received a call from his

probation officer, who told him to report to the probation office the following day.  Third Am.

Compl. at 13.  Plaintiff alleges that Thomas and Tavarez had contacted his probation officer,

who, as a result of the infraction, threatened to take Plaintiff "before the judge in [his] white

collar case for [a] probation violation."  Third Am. Compl. at 13.

On July 17th, 2020, Plaintiff "decided enough was enough" and initiated this action by

filing his *pro se* Complaint [ECF No. 2].  Third Am. Compl. at 13.  A little over a week later,

Plaintiff received a letter that within 48 hours he was being administratively transferred to a

shelter in Brooklyn, New York.  Third Am. Compl. at 13.  Plaintiff has access to "cleaning

supplies and specialized medical equipment," provided by the "nursing staff" at his new facility.

Third Am. Compl. at 13.

## II.  PROCEDURAL HISTORY

Plaintiff amended his complaint for the first time on July 30, 2020.  [ECF No. 6].  On

August 27, 2020, Judge Stein, then presiding over this case, ordered Plaintiff to further amend

his complaint, identifying various pleading deficiencies that Plaintiff would have to remedy if he intended to pursue this action.  [ECF No. 9] (the "August 27 Opinion").  Plaintiff then filed a second amended complaint on October 21, 2020 [ECF No. 11], and the Court thereafter ordered the United States Marshal Service to effect service on the Defendants.  [ECF No. 13].  Defendants then timely moved to dismiss Plaintiff's second amended complaint.  [ECF No. 21].  Pursuant to the Individual Practices of Judge Nathan (the second judge to preside over this case), Plaintiff had the opportunity to amend his complaint a third time.  [ECF No. 22].

Plaintiff elected to amend his complaint, filing the operative Third Amended Complaint on February 19, 2021.  [ECF No. 25].  Defendants thereafter renewed their motion to dismiss [ECF No. 29] ("Mem").[4]  After a delay, Plaintiff filed a "Severe Objection of the Defense Counsel Motion for Dismissal," [ECF No. 46], which the Court construes as Plaintiff's opposition.  ("Opp.").  Defendants responded with a reply letter in support of their motion.  [ECF No. 29] ("Reply").  While the motion was pending, this case was reassigned to me.

Plaintiff's Third Amended Complaint seeks $800,000 for "pain & injuries & emotional stress and suffering," the termination of Thomas and Tavarez, a "certified letter of apology for defendants failure to comply w/ rule of law," and a "complete 'overhaul' of" the VOA Shelter's management and leadership.  Third. Am. Compl. at 6.

---

[4] Defendants' Motion to Dismiss attaches all related documents in a single PDF, including affidavits, exhibits, and a memorandum of law in support of dismissal.  Because Defendants' Memorandum of Law includes internal pagination, the Court refers to it at the pagination provided rather than the ECF pagination.  On this motion, the Court disregards any extraneous material submitted, and relies on the information provided in Plaintiff's pleadings, and items that the Court may take judicial notice of.  *See Can v. Goodrich Pump & Engine Control Sys., Inc.*, 711 F. Supp. 2d 241, 246 (D. Conn. 2010) ("On a motion to dismiss under Rule 12(b)(6), judicial notice may be taken of other judicial documents that might provide the basis for issue preclusion.").

## LEGAL STANDARD

Defendants move this Court pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's Third Amended Complaint for failure to state a claim upon which relief can be granted.  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  While a sufficiently pleaded complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks, alterations, and citations omitted); *see also Iqbal*, 556 U.S. at 678 (noting that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" (citing *Twombly*, 550 U.S. at 555)).  In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 662.

Plaintiff represents himself in this action *pro se*.  "It is well established that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants." *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010).  The Court therefore liberally construes Plaintiff's pleadings and motion papers to raise the strongest arguments they suggest. *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).  "At the same time, a *pro se* complaint must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

**DISCUSSION**

Defendants argue that Plaintiff's claims are barred under the doctrine of *res judicata*, are moot, and otherwise should be dismissed for failure to state a claim. *See generally* Mem. at 5. The Court addresses each argument in turn.

**I.     PLAINTIFF'S ACTION IS NOT BARRED
        UNDER THE DOCTRINE OF RES JUDICATA**

Plaintiff commenced a seemingly parallel action in New York Supreme Court on July 21, 2020, almost simultaneously with this federal action. *See* Compl., Index No. 100551/2020, *Brandon Jones v. Jisin Thomas, Jonathan Taurez, and Volunteers of America Corp.* That case was ultimately dismissed. Defendants argue that Plaintiff's action is therefore barred under the doctrine of *res judicata*. Mem. at 13-17.

A court may grant dismissal under Federal Rule of Civil 12(b)(6) when a defendant raises claim preclusion as an affirmative defense and it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law. *Conopco, Inc. v. Roll Intern.*, 231 F.3d 82, 86 (2d Cir. 2000). "It is well-settled that, in considering a motion to dismiss, the Court is entitled to take judicial notice of documents integral to or referred to in the complaint, as well as documents filed in other courts and other public records." *Reyes v. Fairfield Props.*, 661 F. Supp. 2d 249, 255 n.1 (E.D.N.Y. 2009) (citing *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006). As such, the Court takes notice of the action docketed at Index Number 100551/2020 in the Supreme Court of the State of New York, New York County, and in particular the Decision and Order filed on January 21, 2021, dismissing that case in its entirety (the "NY Op.").

### A.    Plaintiff's action is not barred by the doctrine of claim preclusion

Under the doctrine of res judicata, or claim preclusion, a "'final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'"  *St. Pierre v. Dyer*, 208 F.3d 394, 399 (2d Cir. 2000) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)).[5]  Thus, the claim preclusion doctrine bars "later litigation if [an] earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action."  *In re Teltronics Servs., Inc.*, 762 F.2d 185, 190 (2d Cir. 1985).  Res judicata, and claim preclusion, "is a rule of fundamental repose important for both the litigants and for society."  *In re Teltronics Servs.*, 762 F.2d at 190. These doctrines serve the goals of avoiding costs and vexation of duplicative litigation, conserving judicial resources, and preventing inconsistent decisions.  *Allen v. McCurry*, 449 U.S. 90, 94 (1980).

To determine whether the doctrine of claim preclusion applies to a New York state court judgment, this Court must apply New York *res judicata* law.  *See New York v. Mountain Tobacco Co.*, 942 F.3d 536, 543 (2d Cir. 2019) ("A federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.") (internal quotation marks omitted).  New York law bars "a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief."  *Mountain Tobacco Co.*, 942 F.3d at 543 (internal quotation marks omitted); *see also Washington v. Blackmore*, 468 F. App'x 86, 87 (2d Cir. 2012) ("[A] claim is barred by res judicata so long as it

---

[5] The Court notes that *res judicata* refers to both claim and issue preclusion, but that the Second Circuit has acknowledged they are "significantly different doctrines."  *Marcel Fashions Group, Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 107 (2d Cir. 2015).

could have been litigated in a prior action."); *Giannone v. York Tape & Label, Inc.*, 548 F.3d
191, 193 (2d Cir. 2008).

The court dismissed Plaintiff's New York state complaint "in its entirety" and directed
the clerk "to enter judgment accordingly."  NY Op. at 4.[6]  That dismissal, however, was
"pursuant to CPLR 3211(a)(7)."  NY Op. at 1.  "Under New York law, a dismissal pursuant to
N.Y. C.P.L.R. 3211(a)(7), for failure to state a cause of action, is presumptively not on a case's
merits and lacks *res judicata* effect; indeed a Rule 3211(a)(7) dismissal is only on the case's
merits if the rendering court explicitly says so."  *DDR Constr. Servs. v. Siemens Indus.*, 770 F.
Supp. 2d 627, 647 (S.D.N.Y. 2011) (collecting cases); *Pereira v St. Joseph's Cemetery*, 78 AD3d
1141, 1142, 912 N.Y.S.2d 121 (2010) ("As a general rule, a dismissal for failure to state a cause
of action is not on the merits and, thus, will not be given res judicata effect.").  Justice Jaffe did
not indicate in her decision that the dismissal of "the entire complaint" was on the merits, and
therefore this Court cannot agree with Defendants that the dismissal was merits-based.  As a
result, Plaintiff's claims are not barred by the doctrine of claim preclusion.

**B.**       ***Plaintiff's claims are not barred by the doctrine of issue preclusion***

Defendants argue, in the alternative, that Plaintiff's claims under the ADA and the
Rehabilitation Act are barred by the doctrine of issue preclusion.  The doctrine of issue
preclusion "is a narrower species of res judicata, [which] precludes a party from relitigating in a
subsequent action or proceeding an issue clearly raised in a prior action or proceeding and
decided against that party or those in privity, whether or not the tribunals or causes of action are
the same."  *Tsirelman v. Daines*, 19 F. Supp. 3d 438, 449 (E.D.N.Y. 2014) (quoting *Ryan v. N.Y.*

---

[6] The Court notes that Defendants provided only a copy of the New York opinion, but not the judgment entered by
the Clerk of the Court dismissing the case.

*Tel. Co.*, 62 N.Y.2d 494, 500, 467 N.E.2d 487, 478 N.Y.S.2d 823 (1984)).  For issue preclusion to apply, the following four requirements must be met: "(1) the identical issue was actually raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the part[ies] had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits."  *Wyly v. Weiss*, 697 F.3d 131, 141 (2d Cir. 2012) (alteration in original).  The party seeking to apply issue preclusion bears the burden of showing that the issues are identical and were necessarily decided in the prior action, and the party opposing its application bears the burden of showing that the prior action did not afford a full and fair opportunity to litigate the issues.  *Id.*

The Court concludes that issue preclusion does not bar Plaintiff's ADA or Rehabilitation Act claim here for substantively the same reasons that this action is not barred by claim preclusion.  Where "the prior claims were dismissed for pleading deficiencies and were not litigated on the merits, neither . . . collateral estoppel, nor the doctrine of issue preclusion are applicable."  *Capellan v. Jackson Ave. Realty, LLC*, 2011 N.Y. Misc. LEXIS 6929, at *5 (N.Y. Sup. Ct. Sept. 26, 2011).  A motion to dismiss pursuant to CPLR 3211(a)(7) accepts the facts alleged in the complaint as true, draws all inferences in the plaintiff's favor, and determines whether the facts alleged comport with a cognizable legal theory.  *See Mendelovitz v Cohen,* 37 A.D.3d 670, 671, 830 N.Y.S.2d 577 (2007).  But it does not resolve the issues on the merits.

\*       \*       \*

Because Plaintiff's action is not barred under a theory of *res judicata*, the Court will review the sufficiency of Plaintiff's Third Amended Complaint.  The Court agrees with its sister court, the Supreme Court of the State of New York, that Plaintiff fails to state a claim upon which relief may be granted.

**II.**   **PLAINTIFF'S COMPLAINT FAILS TO STATE**
**A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

The Court construes Plaintiff's Third Amended Complaint as asserting causes of action

pursuant to the ADA, the Rehabilitation Act, and the FHA.[7]  The Court addresses the ADA and

Rehabilitation Act claims together, and the FHA claim separately.

**A.**   ***Plaintiff's ADA and Rehabilitation Act claims fail as a matter of law***

Title III of the ADA forbids discrimination "on the basis of disability in the full and equal

enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any

place of public accommodation." 42 U.S.C. § 12182(a).  The Court construes Plaintiff's Third

Amended Complaint as alleging that the VOA Shelter is a place of public accommodation under

the ADA, and that he was denied the enjoyment or accommodation of that space on the basis of

his disability.  In order to state a claim under Title III of the ADA, a plaintiff must allege: (1) that

he is disabled under the meaning of the ADA; (2) that defendant(s) own, lease or operate a place

of public accommodation; and (3) that defendant(s) discriminated against him by denying them a

full and equal opportunity to enjoy the services defendants provide because of that known

disability.  *Krist v. Kolombos Rest Inc.*, 688 F.3d 89, 94-95 (2d Cir. 2012); *Camarillo v. Carrols*

*Corp.*, 518 F.3d 153, 156 (2d Cir. 2008).  Rehabilitation Act claims are "treated identically" to

ADA claims.  *See Getso v. City University*, 2009 WL 4042848, at *4 (S.D.N.Y. Nov. 18, 2009);

*Rodriguez v. City of New York*, 197 F.3d 611, 618 (2d Cir. 1998) (Rehabilitation Act and the

ADA "impose identical requirements").

---

[7] To the extent the Plaintiff's Third Amended Complaint could raise a claim under Section 1983, *see* Defs. Mem. at
11-12, any such claim necessarily fails because the Defendants are private parties.  Private parties are not generally
liable for constitutional violations under Section 1983.  *See Sykes v. Bank of America*, 723 F.3d 399, 406 (2d Cir.
2013).  This Court has previously ruled that Plaintiff's then-operative complaint failed to plead that the Defendants
were "state actors," or acting under color of law, for purposes of Section 1983 liability, [ECF No. 9 at 4-5], and
Plaintiff has not cured that deficiency.

### 1.   A claim for money damages does not lie under the ADA or Rehabilitation Act here

Assuming *arguendo* that Plaintiff makes out the required elements for a claim under Title III of the ADA or the Rehabilitation Act, Plaintiff is nonetheless not entitled to the relief he seeks.  It is well established that a private plaintiff suing under the ADA "may only obtain injunctive relief for violations of a right granted under Title III; he cannot recover damages." *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 86 (2d Cir. 2004); *see also Brief v. Albert Einstein Coll. of Med.*, 423 F. App'x. 88, 90 (2d Cir. 2011) (Title III of the ADA "allows only for injunctive relief").  Similarly, a private individual may only obtain injunctive relief for violations of the Rehabilitation Act.  *Forzian v. Indep. Group Home Living Program*, 613 F. App'x 15, 18-19 (2d Cir. 2015); *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 275 (2d Cir. 2009); *Castro v. City of New York*, 24 F. Supp. 3d 250, 259 (E.D.N.Y. 2014) (dismissing ADA and Rehabilitation Act claims against individual defendants because neither statute provides for individual liability for claims for monetary damages); *Cohn v. KeySpan Corp.*, 713 F. Supp. 2d 143, 154-55 (E.D.N.Y. 2010).  Plaintiff here seeks $800,000 for "pain and injuries and emotional stress and suffering."  Third Am. Compl. at 6.  Plaintiff's request for monetary relief is not cognizable under the ADA or the Rehabilitation Act.  *See* 42 U.S.C. § 12188(b)(1)(B) (money damages for civil suit plaintiffs under Title III of the ADA is appropriate "when requested by the Attorney General."); *Forziano*, 613 F. App'x at 18-19.[8]

---

[8] To the extent that Plaintiff seeks to bring an ADA retaliation claim against any Defendant pursuant to 42 U.S.C. § 12203(a), it appears that Plaintiff's claim would fail because that section also does not provide for punitive or compensatory damages under the ADA in this case.  *Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010); *Shipman v. New York State Office of Persons with Developmental Disabilities*, 2012 WL 897790, at *9 (S.D.N.Y. Mar. 12, 2012) (even in the retaliation context, "individuals cannot be held liable for money damages under the ADA in either their personal or official capacities."), *report and recommendation adopted* 2012 WL 3704837, at *3 (S.D.N.Y. Mar. 26, 2012) (money damages unavailable under the ADA); *Kramer v. Banc of America Securities, LLC*, 355 F.3d 961 (7th Cir. 2004), *cert. denied*, 542 U.S. 932, 124 S. Ct. 2876, 159 L. Ed. 2d 798 (2004) (holding that a plaintiff can only recover equitable relief for a retaliation claim under the ADA);. *Alvarado v. Cajun*

### 2.     *Plaintiff lacks standing to seek injunctive relief*

Construing Plaintiff's Third Amended Complaint as seeking declaratory or injunctive relief does not save Plaintiff's ADA and Rehabilitation Act claims.  Plaintiff asks for the "termination" of Defendants Thomas and Tavarez, a "Certified Letter of Apology For Defendants Failure to Comply w/ Rule of Law," and a "Complete 'Overhaul' of VOA" management and leadership.  Third Am. Compl. at 6.  Plaintiff acknowledges that he no longer resides at the VOA, and is instead living at a facility which he finds much more amenable to his requests.  *See* Third Am. Compl. at 13.  Plaintiff's non-monetary claims for relief are therefore moot.

"[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *Powell v. McCormack*, 395 U.S. 486, 496 (1969).  A case may be considered mooted when it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."  *See also Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 221-22 (2000) (citation and italics omitted).  Plaintiff can suffer no ongoing harm at the hands of the Defendants because he no longer lives at the facility at-issue in this cause of action.  *See Am. Freedom Def. Initiative v. Metro. Transp. Auth.*, 815 F.3d 105, 110 (2d Cir. 2015) (case moot where ongoing harm not present and where challenged conduct has been completely eliminated); *Wiltz v. New York Univ.* 2019 U.S. Dist. LEXIS 220563, at *46-47 (S.D.N.Y. Dec. 23, 2019) (no standing under FHA, ADA, or Rehabilitation Act where plaintiff no longer resided with defendants, so no showing of "a real or immediate threat that he will be

---

*Operating Co.*, 588 F.3d 1261, 1269-70 (9th Cir. 2009) (holding "punitive and compensatory damages are not available for ADA retaliation claims.").

wronged again.") *report and recommendation adopted* 2020 U.S. Dist. LEXIS 22866 (S.D.N.Y.

Feb 10, 2020) *appeal dismissed* 2020 U.S. App. LEXIS 41705 (2d Cir. Sept. 23, 2020).

Here, even if this Court could order the termination of employees, or the reorganization

of a private, non-profit organization (a specious proposition), doing so would not give Plaintiff

any relief because he no longer interacts with those employees or resides at the VOA Shelter,

thereby mooting Plaintiff's non-monetary requests for relief. *See Knox v. Serv. Emps. Int'l*

*Union, Local 1000*, 567 U.S. 298, 307 (2012) ("A case becomes moot only when it is impossible

for a court to grant any effectual relief whatever to the prevailing party.") (internal quotation

marks omitted).

The Court therefore grants Defendants' Motion to Dismiss Plaintiff's Third Amended

Complaint with respect to the asserted ADA and Rehabilitation Act claims.

### B.      *Plaintiff's FHA claims fails to state a claim upon which relief can be granted*

The FHA "broadly prohibits discrimination in housing." *Mitchell v. City of New York*,

2019 WL 2725615, at *3 (S.D.N.Y. July 1, 2019). The FHA, as applicable here, makes it

unlawful "[t]o . . . make unavailable or deny, a dwelling to any buyer or renter" or "[t]o

discriminate against any person in the terms, conditions, or privileges of sale or rental of a

dwelling, or in the provision of services or facilities in connection therewith," on the basis of,

*inter alia*, disability. 42 U.S.C. §§ 3604 (a), (b), (f)(1)-(2). For purposes of the FHA,

discrimination includes a refusal to make "reasonable accommodations in rules, policies,

practices, or services, when such accommodations may be necessary to afford such person equal

opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). The FHA also makes it

"unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or

enjoyment of . . . any right granted or protected by" Section 3604. 42 U.S.C. § 3617. The Court

liberally construes *pro se* Plaintiff's Third Amended Complaint as alleging a disparate treatment

or impact claim, a denial of reasonable accommodations claim, and a retaliation claim under the FHA. To the extent Plaintiff asserts such claims, the FHA claims fail as a matter of law and must be dismissed.

### 1. Plaintiff is not within the category of persons protected by the FHA and does not have standing to assert a claim under the FHA

As stated, the Fair Housing Act makes it illegal to "to discriminate in the sale or rental, or otherwise make unavailable or deny, a dwelling to any buyer or renter because of a" disability. 42 U.S.C. § 3604(f). Based on the plain language of the FHA, a plaintiff must—at minimum—allege that he was discriminated against 1) in the sale or rental, or otherwise was made unavailable or denied, 2) a dwelling, 3) as a buyer or renter, 4) because of a disability. *Id.*; *see also Jenkins v. NY City Dep't of Homeless Servs.*, 643 F. Supp. 2d 507, 516-20 (S.D.N.Y. 2009) *aff'd* 391 F. App'x 81 (2d Cir. 2010); *Ricks v. Beta Development Co.*, 92 F.3d 1193, 1996 U.S. Dist. LEXIS 19743, 1996 WL 436548, at *1 (9th Cir. Jul. 10, 1996). (upholding dismissal of a Section 3604(f) claim and holding that the FHA "employs the terms 'renter or buyer', suggesting that, at the very least, [the plaintiff] must allege that he is a prospective buyer to achieve standing."). As a fundamental matter, Plaintiff must be a "buyer or renter" to maintain an FHA claim.[9]

The FHA defines "to rent" as "to lease, to sublease, to let and otherwise to grant *for a consideration* the right to occupy premises not owned by the occupant. 42 U.S.C. § 3602(e) (emphasis added). Plaintiff does not allege that he paid anything to live at the VOA Shelter. Indeed, the most generous read of Plaintiff's Third Amended Complaint indicates that he was *directed* to live there from February 2020 to July 2020. *See* Third Am. Compl. at 10, 13

---

[9] The Court assumes without agreeing that the VOA Shelter constitutes a "dwelling" for purposes of the FHA. *See Madison v. Graham*, 2021 U.S. Dist. LEXIS 124437, at *12 (S.D.N.Y. July 1, 2021) ("District courts in the Second Circuit have held that the FHA does not apply to certain shelters" and the question remains open).

16

(Plaintiff was "transferred" to the VOA Shelter from another in Manhattan, and later "transferred" to his current facility in Brooklyn).  On these facts, no inference arises that Plaintiff was a "buyer or renter" under the FHA.  *Jenkins*, 643 F. Supp. 2d at 519-20.  Plaintiff's FHA claims are not cognizable for the simple fact that the plain language of the statute does not apply to Plaintiff as a non-renter.[10]

Even if this Court were to assume that Plaintiff was a renter or buyer at the VOA Shelter, Plaintiff's claims under the FHA would still fail to state a claim upon which relief may be granted.

### 2.   *Plaintiff's FHA reasonable accommodation claim fails to state a claim*

The only provision of the FHA that Plaintiff explicitly invokes is 42 U.S.C. § 3604(f)(3)(B).  Third Am. Compl. at 2.  A plaintiff may make out an FHA violation under Section 3604(f)(3) by claiming a failure to make a reasonable accommodation.  *Regional Economic Community Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 48 (2d Cir. 2002).  To bring a reasonable accommodation claim, a complaint must make out that: (1) the plaintiff suffers from a handicap as defined by the FHA; (2) the defendant knew or reasonably should have known of plaintiff's handicap; (3) accommodation of the handicap may be necessary to afford plaintiff an equal opportunity to use and enjoy the dwelling; (4) the requested accommodation was reasonable; and (5) the defendant refused to make such accommodation.  *See Olsen v. Stark Homes, Inc.*, 759 F.3d 140, 156 (2d Cir. 2014).

---

[10] The FHA's prohibition on "otherwise mak[ing] unavailable or deny[ing]" a dwelling on the basis of disability is of no help to Plaintiff because he is not a buyer or renter for purposes of the statute.  *Jenkins*, 643 F. Supp. 2d at 519-20 (the "'otherwise make unavailable' clause may expand the prohibited activities under § 3604(f) beyond simply renting and selling but it does not expand the class of individuals who are protected from discrimination on the basis of handicap beyond renters or buyers."); *Ricks*, 1996 WL 436548, at *1 (no standing if not renting or buying).

The Second Circuit appears to differentiate between "intentional" and "non-intentional" discrimination claims under the FHA, treating a reasonable accommodation as "non-intentional." *See Forziano*, 613 F. App'x at 18-19 (Section 3604(f)(3) is a "non-intentional discrimination claim" under the FHA). Non-intentional discrimination claims provide only for "injunctive relief," not money damages. *See id.* ("Plaintiffs' reasonable accommodation damages claims must be dismissed because it is well-settled that injunctive relief is the only relief available for non-intentional violations of the [FHA, ADA, and the Rehabilitation Act]."). As discussed above in the context of Plaintiff's ADA and Rehabilitation Act claims, Plaintiff's request for injunctive relief is moot. The Court therefore is constrained to dismiss Plaintiff's reasonable accommodations claim under the FHA. *Id.*; *Wiltz*, 2019 U.S. Dist. LEXIS 220563, at *46-47 (no standing under FHA, ADA, or Rehabilitation Act where plaintiff no longer resided with defendants).

### 3.      *Plaintiff's FHA disparate treatment or impact claim fails to state a claim*

A plaintiff alleging violations of Section 3604(f)(1) or (f)(2) of the FHA may proceed under two theories: disparate treatment or disparate impact. *See LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 425 (2d Cir. 1995).

**Disparate treatment.** To state a claim under either Section 3604(f)(1) or (f)(2) on the basis of disparate treatment at the motion to dismiss stage, a "plaintiff must allege enough facts to state a plausible claim that animus against the protected group was a significant factor in the position taken by the [] decision-makers." *Perricone-Bernovich v. Tohill*, 843 F. App'x 419, 421 (2d Cir. 2021) (internal quotation marks omitted); *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 73 (2d Cir. 2021) (FHA discrimination claim must "plausibly allege . . . at least minimal support for the proposition that the [defendant] was motivated by discriminatory intent."); *see also Palmer v. Fannie Mae*, 755 F. App'x. 43, 45 (2d Cir. 2018) (disparate treatment plaintiff

must state he was a "member of a protected class," suffered relevant "adverse" treatment, and

plead facts that suggest "an inference of discriminatory motivation."). The Second Circuit has

instructed that an "inference of discrimination can be shown through circumstances

demonstrating that a person or group is treated differently from others who are 'similarly

situated.'" *Littlejohn v. City of N.Y.*, 795 F.3d 297, 312 (2d Cir. 2015).[11]

Plaintiff fails to provide facts that could plausibly support even a minimal inference of

discriminatory motivation. Nowhere in Plaintiff's Third Amended Complaint does he allege,

conclusory or otherwise, that an action taken by any Defendant was because of his disability.

Nor does Plaintiff identify other individuals, disabled or not, at the shelter who were treated

differently than he was. Nothing suggests, for example, a non-disabled resident was allowed to

keep his medication in the refrigerator while others—including Plaintiff—were not. *See*

*Perricone-Bernovich*, 843 F. App'x at 421 (FHA disparate treatment claim properly dismissed

where "nothing in the complaint" suggested that Plaintiff's treatment was "different from those

faced by similarly-situated [people] without disabilities."). To the extent that *no one* was

allowed cleaning supplies or medical equipment, the only inference is that *all* residents were

treated equally (*i.e.* there was no disparate treatment), and in all events it would be difficult to

impute a discriminatory motive to any Defendant. Plaintiff therefore cannot succeed on a

disparate treatment theory.

**Disparate impact.** Plaintiff also fails to state a claim on a disparate impact theory. A

"*prima facie* case under a disparate impact theory requires a showing of 'a significantly adverse

or disproportionate impact on persons of a particular type' produced by a facially neutral

---

[11] *Littlejohn*, and its progeny, concerned employment discrimination claims. The Second Circuit, and courts within it, have applied its teachings to the framework of FHA claims. *See Palmer*, 755 F. App'x at 45 n.1.

practice." *Perricone-Bernovich*, 843 F. App'x at 421 (quoting *Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 574-75 (2d Cir. 2003)).  Plaintiff's Third Amended Complaint relays grievances with the way he was treated by the Defendants, not how the practices of the Defendants had a disproportionate impact on people with disabilities generally.  Because the gravamen of Plaintiff's Third Amended Complaint relates to his individual experiences with the Defendants—and does not plead *any* facts about how his treatment was indicative of systemic adverse impact on those with disabilities generally—Plaintiff cannot succeed on a disparate impact theory of FHA liability.

### 4.    *Plaintiff's FHA retaliation claim fails to state a claim*

A *prima facie* retaliation claim under the FHA Section 3617 must allege "(1) the plaintiff engaged in [a] protected activity, (2) the defendant was aware of this activity, (3) the defendant took adverse action against the plaintiff, and (4) a causal connection exists between the protected activity and the adverse action."  *Wilson v. Wilder Balter Partners, Inc.*, 2015 WL 685194, at *8 (S.D.N.Y. Feb. 17, 2015).  Section 3617 requires "a showing of a particular state of mind, *i.e.*, a retaliatory motive."  *Austin v. Town of Farmington*, 826 F.3d 622, 630 (2d Cir. 2016).  "[R]egardless of how the prima facie standard is articulated, the plaintiff is required to show that defendant's action against him arose from a discriminatory motive."  *Haber v. ASN 50th St. LLC*, 847 F. Supp. 2d 578, 586 (S.D.N.Y. 2012).

The Court notes that Defendants oppose Plaintiff's FHA reasonable accommodation claim because he "does not allege that he exercised his rights under the FHA and [that] Defendants coerced, intimidated, or threatened him, or interfered with his exercise of those rights."  Mem. at 10.  That statement, and the pithy argument that follows, is cookie cutter, almost word-for-word lifted from the Court's August 27 Opinion ordering Plaintiff to amend his complaint.  *Compare* Mem. at 10 *with* August 27 Opinion at 7.  Defendants' stolen argument that

the "only specific fact that Plaintiff alleges" relates to an interaction with his probation officer is nonsensical where Plaintiff has amended his complaint *two times* since the Court's August 27 Opinion, and now includes an additional "factual statement of record" in his Third Amended Complaint that includes information beyond that originally pled.

However, Plaintiff fails to plead any *new* factual allegations that draw a causal connection between a protected activity and an adverse action.  Plaintiff characterizes certain of his complaints throughout his tenure at the VOA shelter as "formal grievances."  Third Am. Compl. at 15.  Without more, the Court cannot understand if these were protected activities that allow the Court to draw a nexus between them and any adverse action.  Plaintiff does state that he contacted "DHS, NYS Agencies and 311" and received a complaint number in early-late July 2020.  Third Am. Compl. at 12.  Following that, Plaintiff pleads he "started having more issues with the Directors" of the VOA Shelter.  Third Am. Compl. at 12.  But the Court cannot credit the vague and conclusory allegation that a complaint was met with "more issues" for purposes of this motion.  *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *cf. Kastrati v. Progress of Peoples Mgmt. Corp.*, 2020 U.S. Dist. LEXIS 221464, 2020 WL 6940991, at *5 (E.D.N.Y. Nov. 24, 2020) ("Plaintiff's allegations purportedly supporting an inference of retaliatory intent rest exclusively on timing.  However, Plaintiff was subject to gradual adverse actions well before" the allegedly protected activity took place).

In any event, as the Court discussed with respect to Plaintiff's disparate treatment and impact theories above, the Third Amended Complaint is devoid of any reference to a desire to discriminate against Plaintiff because of his disability or because of an alleged protected activity with respect to that disability.  *Cf. Francis*, 992 F.3d at 73 (FHA claim must "plausibly allege . . .

at least minimal support for the proposition that the [defendant] was motivated by discriminatory intent"); *Austin*, 826 F.3d 622 (an FHA retaliation claim "require[s] a showing of a particular state of mind, *i.e.*, a retaliatory motive.").  Accordingly, Plaintiff's FHA retaliation claim must therefore be dismissed.

## III.   LEAVE TO FURTHER AMEND THE COMPLAINT FOR A FOURTH TIME IS NOT WARRANTED

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  While Plaintiff does not ask for leave to amend, the Court nonetheless has considered whether, as a *pro se* litigant, Plaintiff again should be given leave to amend his deficient complaint.  *See Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795-96 (2d Cir. 1999) (per curiam) (*pro se* plaintiffs should generally be given leave to amend).  A district court may deny leave to amend when amendment would be futile because the problem with the claim "is substantive [and] better pleading will not cure it."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

"[E]ven the special solicitude afforded to *pro se* litigants does not entitle Plaintiff to file an infinite number of amended pleadings."  *Boykin v. Moreno*, 2020 WL 882195, at *8 (S.D.N.Y. Feb. 24, 2020).  This is especially true where "Plaintiff has fixed virtually none of the deficiencies highlighted by the Court in its" prior opinions and orders.  *Id.*  Under such circumstances, Courts in this district routinely dismiss a Plaintiff's amended pleadings with prejudice.  *See Al-Qadaffi v. Servs. for the Underserved (SUS)*, 2015 WL 585801, at *8 (S.D.N.Y. Jan. 30, 2015), *aff'd* 632 F. App'x 31 (2d Cir. 2016) (dismissing a pro se plaintiff's claim with prejudice where he "already had one chance to amend his Complaint, and there is still no indication that a valid claim might be stated if given a second chance"); *Boykin*, 2020 WL 882195, at *8 (dismissing a plaintiff's fourth amended pleadings).

Plaintiff has been given—in federal court—four chances to state a legally cognizable claim.  [ECF Nos. 2, 6, 11, 25].  The substantive issues in Plaintiff's Third Amended Complaint—also identified in the Court's prior August 27 Opinion [ECF No. 9]—cannot be cured through further amendment.  Amendment would therefore be futile, and Plaintiff is not granted leave to further amend his complaint.  *See Cuoco*, 222 F.3d at 112 ("[A] futile request to replead should be denied.").

\*       \*       \*

The Court has carefully reviewed Plaintiff's Third Amended Complaint and the Parties' briefs.  Any remaining allegations not specifically discussed in this opinion are without merit and fail to state a claim upon which relief can be granted.  To the extent that Plaintiff's Third Amended Complaint raises questions of state law, the Court declines to exercise supplemental jurisdiction over them.  Third Am. Compl. at 2 (denoting basis for jurisdiction is federal question jurisdiction); Third Am. Compl. at 3 (plaintiff, and at least one defendant, is a New York citizen); *see United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (a district court should decline supplemental jurisdiction if, as here, all federal claims have been dismissed at the pleading stage).

## CONCLUSION

For the reasons stated herein, Defendants' Motion to Dismiss is GRANTED with prejudice.  The Clerk of the Court respectfully is requested to close this case.  The Clerk of the Court is also respectfully requested to mail a copy of this opinion to the *pro se* Plaintiff at the address of record.

**SO ORDERED.**

**Date:   March 14, 2022**
        **New York, NY**

MARY KAY VYSKOCIL
United States District Judge